IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DARRELL LAW, | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 19-924 (MN) |
| WARDEN DAVID PIERCE, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Darrell Law, Smyrna, Delaware – *Pro Se* Plaintiff

November 19, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Plaintiff Darrell Law ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center ("JTVCC"), filed this action pursuant to 42 U.S.C. § 1983 on May 17, 2019, and amended his complaint on May 27, 2020. (D.I. 2, 22). He has also filed a motion for emergency injunctive relief. (D.I. 21). Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 18). This Court proceeds to review and screen the matter pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(a).

### I.  BACKGROUND

When Plaintiff commenced this action he named three defendants: Warden David Pierce ("Pierce"), Warden Dana Metzger ("Metzger"), and Commissioner Perry Phelps ("Phelps"). (D.I. 2)  The Amended Complaint adds 25 defendants. (D.I. 22 at 2-4).  Plaintiff alleges Defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution and pursuant to Article 1, § 11 of the Delaware Charters, Prisoner Health Care Clause[1] when Defendants exposed him to dangerous and harmful housing conditions and health care providers covered-up his diagnosis, delayed treatment, and contributed to the development of his chronic health problems. (D.I. 22 at 2).

Plaintiff alleges that he was housed in Building 22, B tier, cell 9 at JTVCC from November 6, 2016 until September 2017 where he was "excessively exposed to harmful and dangerous allergens and carcinogens" due to Defendants' failure to maintain and/or upkeep the ventilation and air systems in Building 22. (D.I. 2 at 3; D.I. 22 at 6). Plaintiff alleges that Defendants were "given notice" via his grievance submissions. (D.I. 22 at 6). Plaintiff alleges

---

[1]  Presumably Plaintiff is referring to Article 1, Section 11 of the Delaware Constitution. Plaintiff's Delaware constitutional claims are premised on the same operative facts as his federal claims.

that he contracted chronic hypersensitivity pneumonitis[2] due to consistently breathing and inhaling contaminated air supplies. (D.I. 2 at 3). As early as May 2017, he began complaining of breathing difficulties and shortness of breath through sick call slips. (*Id.*)

In September 2017, Plaintiff was transferred to Building D-East. (*Id.*). Plaintiff submitted medical grievances on December 11, 2017 and April 12, 2018 complaining of general difficulties that included shortness of breath. (D.I. 3 at 1-7; D.I. 22 at 6). Plaintiff alleges that his breathing problems and complaints persisted up to July 2018 and that JTVCC medical staff and Connections Community Program (the medical contract provider at the time) "grew more negligent, indifferent and reluctant towards his medical needs and complaints." (D.I. 2 at 3; D.I. 22 at 6). Plaintiff was transferred to the JTVCC infirmary in July 2018 "under a pretense of pneumonia, according to Defendant Dr. Jackson ("Dr. Jackson")." (D.I. 22 at 6). Plaintiff was transferred to B-Building, A Tier several days later and remained there until March 2019. (*Id.*)

Plaintiff hospitalized in March 2019, and a March 11, 2019 surgical pathology report indicates a history of pulmonary fibrosis with a diagnosis of "usual interstitial pneumonia pattern with focal bronchiolocentricity and occasional interstitial granulomas, most suggestive of chronic hypersensitivity pneumonitis." (D.I. 3 at 8). Plaintiff alleges that he was diagnosed with pulmonary fibrosis, "more likely than not, due to being excessively exposed to harmful and dangerous allergens carcinogens of which also caused [his] allergic reactions." (D.I. 22 at 6). He also alleges that the pulmonary fibrosis is "derived from chronic hypersensitivity." (D.I. 2 at 3). Plaintiff alleges that in April or May 2019, Defendants misdiagnosed him with autoimmune disease. (D.I. 22 at 7). Plaintiff commenced this action on May 17, 2019. (D.I. 2).

---

[2] Hypersensitivity pneumonitis is a common interstitial lung disease resulting from inhalation of a large variety of antigens by susceptible individuals. *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5036552/ (last visited Nov. 18, 2020)

In his amendment, Plaintiff refers to matters that occurred following the filing of his original complaint. (D.I. 22 at 7). He alleges that August 2019 medical reports revealed a progression of pulmonary fibrosis and that in November 2019 Defendants prescribed him medication that was not beneficial and may have caused him further harm. (*Id*.). It also alleges that Plaintiff expressed his concerns to Defendants Sergeant Cain ("Cain"), Lieutenant Buckles ("Buckles"), and Lieutenant Burman ("Burman") about effects of the COVID-19 virus and its impact upon him because of his pulmonary condition. (*Id*.). On March 20, 2020, Plaintiff asked Defendants to medically quarantine him as a precautionary measure. (*Id*.). His request was ignored and closed on April 3, 2020. (*Id*.). Plaintiff tested positive for COVID-19 on April 11, 2020, was taken to the hospital on April 12, 2020 for treatment, discharged on April 27, 2020, and returned to JTVCC where he was housed in the infirmary under medical quarantine. (*Id*.).

Plaintiff seeks injunctive relief including release from custody of the Delaware Department of Correction and medical care upon his release,[3] as well as compensatory damages. (D.I. 2 at 3-4; D.I .22 at 8). On April 6, 2020, Plaintiff filed a motion for emergency injunctive relief that appears to seek medical treatment. (D.I. 21). The motion will be addressed in Section V. of this Memorandum Opinion.

## II.     LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is

---

[3]     Plaintiff is scheduled for release in April 2021. *See* https://vinelink.vineapps.com/person-detail/offender/2591271;tabIndexToSelect=0 (last visited Nov. 18, 2020).

immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020) (quoting *Neitzke v. Williams*, 490 U.S. 319, 331 (1989)); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112 (3d Cir. 2002). "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.'" *Dooley v. Wetzel*, 957 F.3d. at 374 (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (2003) and *Neitzke*, 490 U.S. at 327-28).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when deciding Federal Rule of Civil Procedure 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). Before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, this Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d at 114.

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570). Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *see also Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

### A. Personal Involvement/Respondeat Superior

Plaintiff has named many individuals as defendants based upon their supervisory positions. Many allegations are directed towards the "all encompassing" Defendants, and not to a specific individual. And, there are no allegations directed to most of the defendants who are identified in the "Parties" section of the Amended Complaint.

It is well established that there is no respondeat superior liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he [ ] neither participated in nor approved"; personal involvement in the alleged wrong is required. *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see also Polk Cty. v. Dodson*, 454 U.S. 312, 325, (1981) (holding that liability in a § 1983 action must be based on personal involvement, not respondeat superior). Such involvement may be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

To the extent Plaintiff alleges that supervisory officials were aware of unlawful conditions of confinement[4] by reason of his grievance submissions (*see* D.I. 22 at 6), the claim fails.[5] The

---

[4] This Court does not address whether Plaintiff has adequately alleged a conditions of confinement claim other than in the context of Plaintiff's failure to assert such a claim against a specific defendant.

[5] To the extent Plaintiff attempts to raise claims based upon his dissatisfaction with the grievance procedure or denial of his grievances, the claims fail because an inmate does not have a "free-standing constitutionally right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). In addition, the claim against Defendant Medical Grievance Committee fails as it is not a person as is required to state a claim under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 69 (1989); *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).

grievances Plaintiff provides this Court to support his claims are medical grievances that sought medical care and do not speak to the issue of conditions of confinement. Nor is there any indication that non-medical supervisory officials, including past and present JTVCC wardens and DOC Commissioners, were aware of the grievances Plaintiff submitted. And, even were they aware of the grievances, participation in the after-the-fact review of a grievance is not enough to establish personal involvement. *See*, *e.g.*, *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation). *See also Cole v. Sobina*, C.A. No. 04-99J, 2007 WL 4460617 (W.D. Pa. Dec. 19, 2007); *Ramos v. Pennsylvania Dep't of Corrections*, C.A. No. 4:CV-06-1444, 2006 WL 2129148 (M.D. Pa. July 27, 2006); *Jefferson v. Wolfe*, C.A. No. 04-44 ERIE, 2006 WL 1947721 (W.D. Pa. July 11, 2006). Moreover, with regard to Plaintiff's medical claims, a non-medical prison official must either actually know, or have reason to believe, that prison doctors are mistreating or not treating the prisoner to be liable for deliberate indifference. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). There are no such allegations directed towards non-medical prison officials.

With regard to non-supervisory defendants, the general standard for liability requires a showing that each defendant was personally involved in the alleged wrongdoing. *Evancho v. Fisher*, 423 F.3d at 353 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.* The mere naming of an individual as a defendant without facts supporting any type of claim simply does not suffice to meet federal pleading standards. The only Defendants to whom allegations are specifically directed are Dr. Jackson, Cain, Buckles, and

7

Burman. The claims against these defendants are discussed in a later section of this Memorandum Opinion.

Plaintiff has failed to plead facially-plausible claims against Defendants Pierce, Metzger, Phelps, Commissioner DeMattias, Warden May, Captain Burton, Unknown Unit Commanders 1 and 2, John Doe Corrections Officers/Maintenance Workers 1 and 2, Cpl. Dutton, Cpl. Burley, Unknown Medical Director, Dr. Heresniak, Dr. Adai, Unknown Doctor, Consultant Coordinator Lisa, Medical Provider Hollis, Medical Provider Charles, Medical Provider Monica, Unknown Medical Provider, Medical Provider Wilson, Medical Provider Williams, and Medical Grievance Committee. The foregoing Defendants will be dismissed as the claims against them are deficiently pleaded.

### B. Medical Needs

Plaintiff alleges that health care providers covered-up his diagnosis, delayed medical treatment, and contributed to the development of his chronic health problems. A prison official's "deliberate indifference to serious medical needs of prisoners" is a kind of cruel and unusual punishment "proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). *See also Brown v. Plata*, 563 U.S. 493, 511 (2011) (when a prison deprives a prisoner of adequate medical care, Courts have a responsibility to remedy the resulting Eighth Amendment violation); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (under the Eighth Amendment prisons officials must ensure inmates receive adequate medical care).

In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails

to take reasonable steps to avoid the harm. *Farmer*, 511 U.S. at 837. A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

Here, the only medical provider against whom any allegations are directed is Dr. Jackson. Plaintiff alleges that Dr. Jackson transferred Plaintiff to the JTVCC infirmary in July 2018 "under a pretense of pneumonia." This allegations does not allege deliberate indifference. To the contrary, it alleges that Dr. Jackson transferred Plaintiff to the infirmary to treat a medical condition.

Plaintiff's other allegations and, more particularly, when considered with the exhibits Plaintiff submitted to support his claims, do not rise to the level of constitutional violations under the Eighth Amendment. Rather, the allegations and exhibits indicate that Plaintiff has, and continues to receive medical treatment. *See Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978) ("Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim.") (quotation marks omitted). To the extent there may have been a misdiagnosis, at most, this implies negligence.. Merely negligent treatment does not give rise to a constitutional violation. *Spruill*, 372 F.3d at 235. Also, although Plaintiff may not agree with the treatment he has received, he has no right to choose a specific form of medical treatment so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000)).

With regards to the medical needs claims, the allegations are insufficient to state a plausible constitutional violation and will be dismissed. Plaintiff will, however, be given leave to amend the claim.

### C.     Coronavirus

In the Amended Complaint Plaintiff raises claims against Cain, Buckles, and Burman, alleging that on March 20, 2020, Plaintiff asked Defendants to medically quarantine him as a precautionary measure, his request was ignored and closed on April 3, 2020.  He alleges that on April 11, 2020 he tested positive for COVID-19 and was taken to the hospital on April 12, 2020 for treatment, discharged on April 27, 2020, and returned to JTVCC where he was housed in the infirmary under medical quarantine.

Rule 20 of the Federal Rules of Civil Procedure governs the permissive joinder of parties in an action. Rule 20(a)(2) allows persons to "be joined in one action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20.  Joinder of claims, parties, and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness.  *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 218 (1966); *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009).  The policy behind Rule 20 is not a license to join unrelated claims and defendants in a single lawsuit.  *See Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007).

The claims against Cain, Buckles, and Burman do not arise out of the same transaction, occurrence, or series of transactions or occurrences, occurred during a different time-frame than the claims raised in the original Complaint, and lack a question or law or fact common to all Defendants.  As such, the claims do not satisfy the requirements for joinder, even under a liberal application of Rule 20.  Plaintiff may not raise the coronavirus claim in the instant action.  Should

he wish to raise this claim, he should file a new lawsuit against Cain, Buckles, and Burman. Thus, this claim will be dismissed.

## IV.     MOTION FOR INJUNCTIVE RELIEF

Plaintiff seeks injunctive relief. (D.I. 22). The motion states that Plaintiff's "originally filed civil rights complaint of May 17, 2019 implies the necessity for (preliminary) injunctive relief . . . in light of . . . misconduct of which has caused the Plaintiff's exposure to 'contaminated air supplies' and the significant injury to his lungs." (*Id.* at 1, 2). The motion reiterates claims Plaintiff has raised and contends that he is not administered appropriate medication for his condition. (*Id.* at 2, 3). It also references Plaintiff's March 20, 2020 request for isolation due to the coronavirus. (*Id.* at 3).

It is not clear from the motion what injunctive relief Plaintiff seeks. Plaintiff, however, clarified the relief sought in his reply to the response to the motion filed by Warden Robert May ("Warden May"). (D.I. 34, 36). He states that he seeks "variable forms of medical treatment and necessary release from prison due to his declining health and necessity for a lung transplant assessment." (D.I. 36 at 1, 2).

A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted). "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Id.* (citations omitted). Because of the intractable problems of prison administration, a request for injunctive relief in the prison context

11

must be viewed with considerable caution. *Abraham v. Danberg*, 322 F. App'x 169, 170 (3d Cir. 2009) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

Warden May opposes the motion and argues that Plaintiff cannot meet the requirements for injunctive relief. Warden May provided the Court with the declaration of Dr. Awele Maduka-Ezeh ("Dr. Maduka-Ezeh") who has reviewed Plaintiff's medical records. (D.I. 35). Dr. Maduka-Ezeh states that: (1) Plaintiff has been seen by pulmonologists and primary care providers who have been managing him with medications (steroids, methotrexate, inhalers); (2) Plaintiff has had flare-ups since his diagnosis and in the past nine months appears to have had a more rapid decline; (3) Plaintiff was hospitalized in January 2020 for an infection, diagnosed with COVID-19 in April 2020 and hospitalized, and following discharge housed in the JTVCC infirmary to manage his medical conditions; (4) Plaintiff has become oxygen dependent since the COVID diagnosis, is administered high doses of steroids, and would be considered by most infectious disease experts to be significantly immunosuppressed; (5) Plaintiff was hospitalized again in August 2020 due to a flare-up; (6) consideration is being given to refer Plaintiff to a transplant center to evaluate for possible lung transplant; and (7) as of August 24, 2020, Plaintiff continues on supplemental oxygen and high dose steroids.

The portion of Plaintiff's motion seeking medical care will be denied. The record evidence is that Plaintiff's serious lung condition is continually monitored and treated. Although Plaintiff may not agree with the treatment he receives, it cannot be said that Defendants are deliberately indifferent to his serious medical condition and needs.

As to Plaintiff's request that he be released from prison, the Court cannot provide the relief Plaintiff seeks in his motion. Plaintiff may seek release by filing a petition for habeas corpus under 28 U.S.C. § 2254. A "habeas corpus petition . . . under 28 U.S.C. § 2254 is the only proper

mechanism for a state prisoner to challenge the 'fact or duration' of his state confinement." *See*, *e.g.*, *McKnight v. United States*, 27 F. Supp. 3d 575, 587 (D.N.J. 2014) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973)); *see also Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001).

In addition, in Delaware, motions for reduction or modification of sentence are governed by Superior Court Criminal Rule 35(b) and Delaware Courts will consider a Rule 35(b) motion under 11 Del. C. § 4217. Under § 4217, the Department of Correction may seek modification of an inmate's sentence for good cause, including "a serious medical illness or infirmity." *See Egleston v. State*, No. 160, 2018, 2019 WL 343669 (Del. Jan. 24, 2019) (table) (citing 11 Del. C. § 4217(c)); *Hernandez-Vargas v. State*, No. 191, 2020, 2020 WL 5951372, at *2 (Del. Oct. 7, 2020) (The decision of whether the early release of low-risk offenders would lessen the dangers posed by COVID-19 to the general prison population is best left to the discretion of the Department of Correction, which may move for the modification of any prisoner's sentence for good cause under 11 Del. C. § 4217); *See State v. Hampton*, ID No. 1601004059, 2020 WL 4284327 (Del. Super. Ct. July 21, 2020) ("As this Court has recently and oft noted, no special early release rule or procedure has been created to address the current COVID-19 health crisis.).

Plaintiff has not met the requirements for injunctive relief. His motion will be denied. (D.I. 21).

### V. CONCLUSION

For the foregoing reasons, this Court will: (1) deny Plaintiff's emergency motion for injunctive relief (D.I. 21); (2) dismiss the Complaint/Amended Complaint pursuant 28 U.S.C. § 1915(e)(2)(b)(i) and (ii) and § 1915A(b)(1); and (3) give Plaintiff leave to file a second amended complaint to cure his pleading defects. An appropriate Order will be entered.